UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANA M. ROMERO AND JOSE A. ROMERO, <br>     Plaintiffs/Counter-Defendants <br><br> v. <br><br> U.S. BANK TRUST NATIONAL ASSOCIATION, In Its Individual Capacity and as Owner Trustee for RCF2 Acquisition Trust, <br>     Defendant/Counter-Plaintiff. | § § § § § § § § § § § § § | Case No. 3:24-cv-1175-S-BW |

## MEMORANDUM OPINION AND ORDER

Now before the court is Plaintiffs and Counter-Defendants Ana M. Romero and Jose A. Romero's (collectively, "Plaintiffs") Motion for Continuance and brief in support, filed on November 19, 2024. (Dkt. No. 34 ("Mot.").) Defendants and Counter-Plaintiffs U.S. Bank Trust National Association and U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For RCF 2 Acquisition Trust's (collectively, "Defendants") filed a response on December 4, 2024. (Dkt. No. 39 ("Resp.").) Plaintiffs filed a reply on December 9, 2024 (Dkt. No. 41 ("Repl.")). Therefore, the Motion is ripe and ready for determination.

Pursuant to 28 U.S.C. § 636(b) and Special Order No. 3-354, this case is referred to the undersigned United States magistrate judge for pretrial management, which includes making findings and a recommended disposition when appropriate.

(*See* Dkt. No. 18.)  Having carefully reviewed the briefing and the applicable law, the motion (Dkt. No. 34) is **DENIED**.

## I.  BACKGROUND

**A.     Procedural Background.**

On April 19, 2024, Plaintiffs sued Defendants in the 14th Judicial District Court of Dallas County, Texas, challenging Defendants' authority to foreclose on the property at 524 Erikson Trail, Irving, Texas 75060 (the "Property").  (*See* Dkt. No. 1-2. ("Compl.").)  Plaintiffs allege that the loan at issue was paid off, and Defendants are improperly seeking to foreclose on the Property.  (*See id.* at ¶¶ 9-24.)

On May 17, 2024, Defendants removed to this Court on the basis of diversity jurisdiction.  (*See* Dkt. No 1 at ¶ 7.)  The case was assigned to U.S. District Judge Karen Gren Scholer and referred to U.S. Magistrate Judge David L. Horan for pretrial management pursuant to 28 U.S.C. § 636(b).  (Dkt. No. 3.)  Judge Horan issued an Initial Scheduling Order on June 24, 2024 (Dkt. No. 15), establishing the following pretrial deadlines:

- Amended pleadings and joinder of Parties by September 19, 2024.
- Discovery completed by December 20, 2024.
- Deadline for mediation on or before March 21, 2025.
- Dispositive motions due by March 21, 2025.

(Dkt. No. 15.)

On July 31, 2024, Defendants filed a counterclaim against Plaintiffs, alleging that the loan at issue was due for the December 5, 2020 payment and each subsequent payment. (Dkt. No. 17 ("Counterclm.") at ¶ 15.) Accordingly, Defendants seek a final judgment allowing them to conduct a non-judicial foreclosure sale of the Property under Texas Property Code § 51.002, because the loan on the property is in default, and the loan has been accelerated due to the default. (*See id*. at ¶ 20.) Plaintiffs filed an answer to Defendants' counterclaim on August 28, 2024. (Dkt. No. 19.) Defendants filed an amended answer and affirmative defenses to Plaintiffs' complaint on September 18, 2024. (Dkt. No. 20.)

On October 4, 2024, the parties filed an agreed motion (Dkt. No. 22), requesting to modify the deadline to designate expert witnesses and provide written expert reports from October 21, 2024, to November 26, 2024. (*Id*.) The motion did not seek to change any other scheduling deadlines. (*Id*.) The undersigned granted the parties' motion and entered an Amended Scheduling Order on October 7, 2024 (Dkt. No. 25), extending the deadline for designation of experts to November 26, 2024.

On November 19, 2024, Plaintiffs filed the present motion for continuance (Dkt. No. 34), "request[ing] that the Court continue the trial setting and continue all deadlines found in the Amended Scheduling Order dated October 7, 2024" (Dkt. No. 25). At the time Plaintiffs filed their motion, the September 19, 2024 deadline for amended pleading and joinder of parties had expired. (*See* Dkt. No 25.) Plaintiffs seek a continuance because the mediation conducted on October 17, 2024 did not

result in settlement, as Plaintiffs had hoped (*see* Mot. at ¶¶ 16, 17), and as a result, they seek to add a party (the seller from whom they purchased the Property) and conduct additional discovery (*see* Mot. at ¶¶ 25, 27).

On December 11, 2024, again on the parties' agreed motion, the undersigned entered an Amending Scheduling Order (Dkt. No. 43), which extended the discovery period to January 30, 2025 "for the sole and limited purpose of allowing Plaintiffs to complete the depositions of Selene Finance, LP, and Defendants U.S. Bank Trust N.A. in its capacity as Owner Trustee for RFC Acquisition Trust and, if necessary, U.S. Bank N.A. in its individual capacity" and extending the deadline to file a motion to compel written discovery to January 15, 2025. (*Id.*)

**B.    Factual Background.**

On or about August 30, 2018, Harrison Major took out a Home Equity Loan (the "Loan") secured by the Property, which was at that time his residence. (Mot. at ¶ 8; *see* Dkt. No. 17-1.) On September 12, 2018, Bank of America prepared a Home Equity Line of Credit Security Instrument (the "Security Instrument"), which allegedly secured the Loan with the Property. (*Id.* at ¶ 9; *see* Dkt. No. 17-2.) Major died on or about November 9, 2020, leaving one child, Jennifer Rasberry, and two stepchildren, Carrie Jo Dean and Tammie Lynn Williams, and each of the three then possessed an undivided interest in the Property. (*Id.*; *see* Dkt. No. 17-4 (Affidavit of Heirship).)

On November 23, 2020, at the request of Community National Title, LLC ("CNAT"), Bank of America provided a payoff calculation for the Loan good

through December 23, 2020 (the "Payoff Letter"), which calculated the amount needed to pay off the Loan as $58,819.55. (Mot. at p. 5, ¶ 12.)[1] On December 16, 2020, CNAT wired to Bank of America $58,819.55, allegedly to pay off the Loan in accordance with the Payoff Letter. (*Id.* at ¶ 13.)

On December 17, 2020. Dean and Williams each conveyed their interest in the Property to Rasberry. (Mot. at ¶ 10; *see* Dkt. No. 17-5.) Rasberry then conveyed the Property to SDa1 Holdings LLC ("SDa1") via a General Warranty Deed recorded on December 17, 2020. (Mot. at ¶ 11; *see* Dkt. No. 17-6.) CNAT was the escrow agent used to close this transaction. (*Id.*)

SDa1 next conveyed the Property to Miguel A. Hernandez via a Special Warranty Deed recorded on December 18, 2020. (Mot. at ¶ 14; see Dkt. No. 17-7.) Hernandez then conveyed the Property to Plaintiffs on March 29, 2022. (Mot. at p. 6, ¶ 12; *see* Dkt. No. 17-8.) Plaintiffs allege that Hernandez's deed included a warranty as to title. (*See id.*)

Loan servicing transferred to Selene Finance effective May 2, 2022. (Counterclm. at ¶ 17; *see* Dkt. No. 17-10.) The Security Instrument was assigned to Defendants on August 17, 2022. (Counterclm. at ¶ 17; *see* Dkt. No. 17-3.) On June 1, 2023, Defendants initiated an expedited judicial foreclosure proceeding against Plaintiffs under Texas Rules of Civil Procedure 735 and 736 (the "736 Action") in

---

[1] The motion contains two paragraphs numbered 12, one on page 5 and one on page 6. (*See* Mot. at pp. 5, 6.) For clarity, the Court cites both the page number and the paragraph number.

the 96th District Court of Tarrant County, Texas, Cause No. 096-348666-23. (Compl. at ¶ 13.) The foreclosure application alleged that Plaintiffs were in default under the terms of the Loan because 30 regular monthly payments had not been paid, and the total amount remaining to pay off the Loan was $41,189.57. (*Id.*)

## II.  LEGAL STANDARD

"Federal Rule of Civil Procedure 16(b) governs whether a court should grant leave after expiration of the deadline to amend pleadings." *Mayfield v. Fudge*, No. 4:23-CV-00566-O, 2024 WL 4416882, at *2 (N.D. Tex. Jan. 26, 2024). As previously noted, the deadline for amended pleading and joinder of parties had expired when Plaintiffs filed their motion for continuance.[2] When the deadline to amend pleadings set by a scheduling order has expired, a movant must demonstrate "good cause" to extend that deadline. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *see* Fed. R. Civ. P. 16(b)(4) (providing that a party may only modify a scheduling order "for good cause and with the judge's consent").

The good-cause standard "requires the 'party seeking relief to show that the deadline[ ] [could not] reasonably be met despite [his] diligence.'" *S&W Enterprises, L.L.C.*, 315 F.3d at 535 (citing 6A Charles Alan Wright et al., Federal Practice and

---

[2] Plaintiffs argue that their motion for continuance is not a motion for leave to amend their pleadings, because they would only move for leave to amend if the motion for continuance is granted and the deadline to move for leave is also continued. (Repl. at ¶ 7.) Regardless of how Plaintiffs have styled their motion, it is clear that Plaintiffs ultimately seek to amend their complaint (*see* Mot. at ¶¶ 23-27), and therefore, the Rule 16(b) standard applies.

Procedure § 1522.1 (2d ed. 1990)).  Whether a movant has shown "good cause" depends on four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536; *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013).  A court should consider these factors holistically rather than "mechanically count[ing] the number of factors that favor each side." *EEOC v. Service Temps, Inc.*, No. 3:08-CV-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009).

If a court finds good cause to amend the scheduling order, it should allow the movant to amend his pleadings if "justice so requires." *S&W Enterprises, L.L.C.*, 315 F.3d at 535; *see* Fed. R. Civ. P. 15(a)(1) (specifying the standard for allowing amendments after the period to amend as a matter of course has passed).  Apart from "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003).  This Rule 15 standard for amending pleadings is easier to satisfy than the Rule 16 standard for amending a scheduling order.  *See S&W Enterprises, L.L.C.*, 315 F.3d at 536; *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) (noting that the language of Rule 15(a) "evinces a bias in favor of granting leave to amend").

7

### III. ANALYSIS

In their motion, Plaintiffs contend that they have good cause to amend their complaint and continue the remaining deadlines to complete ongoing discovery and obtain additional discovery because they were "very optimistic" that the case would settle quickly. (Mot. at ¶¶ 21-22.) Plaintiffs aver that because the amount in controversy was relatively small, they wished to "keep fees and costs down for both sides as much as possible by exploring all reasonable avenues of settlement." (Mot. at ¶¶ 14, 21-22; *see also* Dkt. No. 17-10 (showing that the amount due as of May 13, 2022 was $32,812.89).) To that end, Plaintiffs aver that they diligently attempted to negotiate with Defendants in good faith to reach a settlement, while Defendants "exploited Plaintiffs' repeated and consistent effort to save costs for both sides" (Repl. at ¶ 23) by engaging in various delay tactics, including delaying mediation until after certain key deadlines were expired (*see generally* Mot.).

Plaintiffs also take issue with the fact that, instead of appearing or participating in the mediation, Defendants sent their mortgage servicer to appear in their place under a power of attorney, and the parties did not settle at mediation. (*See* Mot. at ¶¶ 7, 16.) Plaintiffs allege that the mediation ended when Defendants' representative "'walked out' by turning off his Zoom, refusing to make a counteroffer, and absolutely refusing to participate further." (Repl. at ¶ 17.) Thereafter, the parties were presented with a mediator's proposal, but due to the time

allowed to respond to the proposal, it was not until October 24, 2024 that the parties learned they had failed to settle the lawsuit. (*See* Mot. at ¶¶ 7, 16; Repl. at ¶ 17.)

Plaintiffs also allege that they "were extremely hopeful that this lawsuit could be resolved without the need for making a claim against Hernandez for breach of warranty, which is why they pursued early mediation," and "it only became clear that the parties would not be able to reach a settlement until a month after the joinder deadline." (Mot. at ¶ 24.) Having failed to reach a settlement, and the September 19, 2024 deadline for amended pleadings and joinder of parties having passed, Plaintiffs assert that "it would be extremely difficult, if not impossible to complete discovery, depositions, and all other remaining issues" under the current scheduling deadlines. (*Id.* at ¶ 25.)

Defendants respond that Plaintiffs' lack of diligence is no explanation for failing to timely amend their complaint and complete discovery. (*See generally* Resp.) Defendants further argue that Plaintiffs were aware of their potential claims against Hernandez since case inception because they identified Hernandez in their original petition, filed on April 19, 2024. (Resp. at ¶ 12 (citing Compl. at ¶ 12).) Thus, to the extent that Plaintiffs anticipate asserting breach of contract/breach of warranty claims against Hernandez, Defendants argue that Plaintiffs have not established that such claims must be pursued in this action rather than in a separate action. (*Id.* at ¶ 20.)

The Court first considers Plaintiffs' explanation for failing to timely file a motion to continued deadlines. Plaintiffs offer but a single explanation: They hoped

9

the case would settle. (*See* Mot. at ¶¶ 21-27.) Plaintiffs' counsel submits copies of emails dated January 31, 2024, through September 27, 2024, demonstrating multiple attempts to communicate with Defendants' counsel regarding settlement. (*See* Dkt. Nos. 41-1-41-12.) And while it does appear that Plaintiffs diligently sought to negotiate a settlement, a close reading of these emails suggests that Defendants were not as eager to negotiate a settlement, including, at times, ignoring emails from Plaintiffs' counsel, or at least failing to promptly respond. (*See, e.g.*, Dkt. 41-2) (March 19, 2024); (Dkt. 41-3) (April 24, 2024, the day before the foreclosure hearing in State Court); (Dkt. No. 41-4 (June 25, 2024); Dkt. No. 41-5 (same); Dkt. No. 41-6 (July 24, 2024).

Additionally, an email dated July 26, 2024, appears to indicate that Plaintiffs made a settlement offer on July 2, but had not yet received a response from Defendants. (*See* Dkt. No. 41-7.) Then, after still not receiving a response to their settlement offer, Plaintiffs' counsel again reached out to Defendants' counsel on August 28, 2024, and September 6, 2024, pleading for a response to their settlement offer or a counteroffer. (*See* Dkt. Nos. 41-8, 41-9.) While the Court does not go so far as to conclude bad faith on the part of Defendants as Plaintiffs allege (*see* Repl. at ¶ 8), there were clear indicators that Defendants were not as interested in negotiating a settlement as Plaintiffs were.

The Fifth Circuit has admonished litigants against taking "this kind of 'wait and see' approach to requesting leave to amend," *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 n.6 (5th Cir. 2003) (citation omitted), and has made clear that "a 'busy

10

district court need not allow itself to be imposed upon by the presentation of theories seriatim.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)); *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 612 (5th Cir. 1993) (similarly rejecting presentation of theories seriatim and what it referred to as the plaintiff's "blind-hog-occasionally-finds-an-acorn approach"); *see also DeWolff Boberg & Assocs., Inc. v. Pethick*, No. 3:20-CV-3649-L, 2023 WL 4937406, at *5 (N.D. Tex. June 30, 2023). Additionally, "[a] litigant's failure to assert a claim as soon as [it] could have is properly a factor to be considered in deciding whether to grant leave to amend." *Rosenzweig*, 332 F.3d at 864.

    First, with respect to their failure to join Hernandez, the party from whom they purchased the Property, Plaintiffs delayed nearly six months, from January to September 2024, while they hoped to reach a settlement with Defendants and thereby avoid making a claim against Hernandez. (*See* Mot. at ¶ 24.) Plaintiffs initiated this lawsuit, and they were aware, or should have been aware, of their potential claims against Hernandez (*see* Compl. at ¶ 12)—claims that are not necessarily tied to their claims against Defendants. "In the context of a motion for leave to amend, the court may deny the motion if the movant 'knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.'" *Udoewa v. Plus4 Credit Union*, No. CIVA H-08-3054, 2010 WL 1169963, at *2 (S.D. Tex. Mar. 23, 2010) (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994), and citing *Pope v. MCI*

11

*Telecommunications Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on same facts); *see also Villarreal v. Johnson*, No. 2:15-CV-219-D, 2018 WL 6272046, at *4 (N.D. Tex. Oct. 31, 2018) (finding that the motion to amend "was not based on new evidence unavailable at the time of the original filing" and denying motion on that basis))), *adopted*, 2018 WL 6267658 (N.D. Tex. Nov. 30, 2018).

Because the Court finds that Fifth Circuit authority illustrates the inadequacy of Plaintiffs' explanation for failing to add Hernandez, this factor weighs heavily against granting the motion. *See E.E.O.C. v. Service Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (affirming a district court's determination that the defendant's failure to account for its delay was dispositive, outweighing the other three factors).

Regarding the second factor, the importance of the amendment, Plaintiffs aver that the requested relief is important due to "the ongoing discovery that is still needed;" the "complex factual and legal issues which require a substantially greater amount for investigation than initially expected"; and their need to add Hernandez as a party because he is "necessary for resolution." (Mot. at ¶¶ 25, 27.) As previously discussed, Plaintiffs knew of their potential claims against Hernandez when they filed their complaint (*see* Compl. at ¶ 12), but they did not seek leave to add Hernandez as a party until they learned this case would not settle. Plaintiffs' "knowledge of th[is] proposed additional part[y] from the outset of the case reveals the importance of suing th[is] additional part[y] was, at least to [plaintiffs], not as

important as suing the existing defendants." *Villarreal*, 2018 WL 6272046, at *5. (denying motion for leave to join additional parties). Thus, Plaintiffs failure to timely add Hernandez suggests that amendment was not an important issue.

Likewise, timely completion of discovery did not appear an important issue to Plaintiffs. They claim they delayed certain discovery activities while waiting for the case to settle because they wanted to keep litigation costs down (*see* Mot. at ¶¶ 14, 21), but this does not explain how this prevented Plaintiffs from timely seeking to amend pleadings or to modify discovery deadlines. The record reflects that Plaintiffs requested extensions of other deadlines when circumstances so warranted. (*See e.g.*, Dkt. No. 22.) Plaintiffs offer no explanation as to why, after notification on October 24, 2024 that mediation was unsuccessful, they delayed issuing subpoenas to Bank of America and Selene Finance. (*See* Dkt. No. 32) (notice of subpoena to Bank of America dated November 13, 2024); Dkt. No. 35 (notice of an amended subpoena to Bank of America dated November 19, 2024); Dkt. No. 38 (notice of subpoena to Selene Finance dated November 25, 2024).) Furthermore, Defendants aver that Plaintiffs did not request deposition availability from Defendants and Selene Finance until November 19, 2024. (*See* Resp. at ¶¶ 5, 14.) "Th[ese] delay[s are] particularly fatal for this factor in light of the impending discovery and summary judgment deadlines." *Mayfield*, 2024 WL 4416882, at *2. Therefore, based on Plaintiffs' untimeliness in seeking amendment and diligently attempting to complete discovery, the Court finds the importance factor weighs against granting the motion.

The Court next considers the third factor: the potential prejudice in allowing the amendment. In limiting the period during which parties can be joined to a lawsuit, district courts advance "the interest[s] of avoiding prejudice and delay, ensuring judicial economy, [and] safeguarding principles of fundamental fairness." 35A C.J.S. Federal Civil Procedure § 133 (2024 update); *see also S&W Enterprises, L.L.C.*, 315 F.3d at 535 (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)). Furthermore, allowing the joinder of parties later in the litigation process can "basically start[ ] [a] lawsuit anew" and thereby "prejudice the existing defendants." *Villarreal*, 2018 WL 6272046, at *5. Such is the case here. Defendants would be prejudiced by further delay in enforcing their rights regarding the Property while Plaintiffs pursue separate claims against Hernandez (and possibly others), claims that would have no impact on Defendants' claim that they have the right to foreclose on their lien. *See Hibernia Energy III, LLC v. Ferae Naturae, LLC*, 668 S.W3d 745, 758 (Tex. App.—El Paso 2022, no pet.) ("[A]n action to foreclose on a lien is an in-rem proceeding, and only those individuals or entities having a *current* interest in the property subject to foreclosure are necessary parties to a foreclosure suit[.]").

Fourth, this prejudice cannot be cured by a continuance, because no amount of extra time can cure the prejudice that will result from the additional time and resources necessary to answer Plaintiffs' amended complaint. *See Mayfield*, 2024 WL 4416882, at *2; *S&W Enterprises, L.L.C.*, 315 F.3d at 537; *see also Ruiz v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 291 F.R.D. 170, 172 (S.D. Tex. 2013) (finding incurable prejudice because the amendment would require reconsideration of case strategy and

14

additional motions and responses); *DeWolff Boberg*, 2023 WL 4937406, at *5 (Granting plaintiffs' motion at this juncture "would unnecessarily delay the proceedings and resolution of the litigation by necessitating a continuance of other deadlines, and, consequently, the trial.") Accordingly, this factor weighs against a finding of good cause to continue the scheduling deadlines.

Considering the above factors and all the circumstances of this case, the Court finds that Plaintiffs have not shown good cause to continue the current scheduling deadlines, including the deadline to join additional parties.

### IV.  CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Continuance (Dkt. No. 34) is **DENIED**.

**SO ORDERED** on January 16, 2025.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE