IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANA M. ROMERO AND JOSE A. ROMERO, | § § § | |
| Plaintiffs/Counter-Defendants | § | |
| | § | |
| v. | § | Case No. 3:24-cv-1175-S-BW |
| | § | |
| U.S. BANK TRUST NATIONAL ASSOCIATION, In Its Individual Capacity and as Owner Trustee for RCF2 Acquisition Trust, | § § § § § | |
| Defendant/Counter-Plaintiff. | § | |

**MEMORANDUM OPINION AND ORDER**

On January 15, 2025, Defendant and Counter-Plaintiff U.S. Bank Trust

National Association, Not In Its Individual Capacity But Solely As Owner Trustee

For RCF 2 Acquisition Trust ("Defendant" or "U.S. Bank"), filed an Expedited

Motion for Protective Order from Certain Rule 30(b)(6) Deposition Topics (Dkt. No.

49), a supporting brief (Dkt. No. 49-1), and an appendix[1] (Dkt. No. 49-2).  Plaintiffs

and Counter-Defendants Ana M. Romero and Jose A. Romero (collectively,

"Plaintiffs") filed a response on January 22, 2025 (Dkt. No. 56), and Defendant filed

a reply on January 23, 2025 (Dkt. No. 57).

---

[1] The appendix contains a copy of the notice of intent to remotely (via Zoom or similar platform) take the oral deposition of a corporate representative of U.S. Bank on Friday, December 20, 2024, at 9:00 a.m.  (*See* Dkt. No. 49-2 ("U.S. Bank App.").)

Also on January 15, 2025, Nonparty Selene Finance LP ("Selene")[2] filed an

Expedited Motion for Protective Order from Certain Deposition Topics (Dkt. No.

48), a supporting brief (Dkt. No. 48-1), and an appendix[3] (Dkt. No. 48-2).  Plaintiffs

filed a response (Dkt. No. 55) on January 22, 2025, and Selene filed a reply (Dkt.

No. 58) on January 24, 2025.

Pursuant to 28 U.S.C. § 636(b) and Special Order No. 3-354, this case is

referred to the undersigned United States magistrate judge for pretrial management,

which includes making findings and a recommended disposition when appropriate.

(*See* Dkt. No. 18.)  Having carefully reviewed the briefing and the applicable law, the

Court finds that both motions (Dkt. Nos. 48, 49) are **GRANTED**.

## I. BACKGROUND

The parties and the Court are familiar with the factual and procedural

background of this case, so the Court will not repeat it here.  *See Romero v. U.S. Bank*

*Tr. Nat'l Ass'n*, No. 3:24-CV-1175-S-BW, 2025 WL 220405, at *1 (N.D. Tex. Jan. 16,

2025).

With respect to the present motions for protective orders (collectively, the

"MPOs"), U.S. Bank and Selene contend that expedited briefing and ruling are

---

[2] Selene is the mortgage servicer for U.S. Bank.  (*See generally* Dkt. No. 49-1.)

[3] The appendix contains a copy of an amended notice of subpoena for deposition duces tecum issued to Selene, pursuant to Rule 45 of the Federal Rules of Civil Procedure, requesting the personal appearance of a corporate representative on January 31, 2025 at 9:00 a.m.  (*See* Dkt. No. 48-2 ("Selene App.").)

necessary to meet the current discovery deadline of January 31, 2025.[4]  (*See* Dkt. No. 49-1 at 4; Dkt. No. 48-1 at 4.)  Plaintiffs respond that U.S. Bank and Selene failed to confer with Plaintiffs regarding the requested shortened briefing schedule as required by Local Rule 7.1 and Fed. R. Civ. P. 26(c) and object to the request for expedited briefing because the time shortage was unilaterally and directly caused by Defendant's and Selene's own failure to diligently object to the deposition notices as issue in the MPOs.  (*See* Dkt. No. 56 at ¶¶ at 54-55; Dkt. No. 55 at ¶¶ 52-53.)  Plaintiffs also contend that they proposed to continue the depositions to a later date by agreement, rather than "waste[] judicial resources and the parties' time with needless motion practice." (*Id*.)  Defendant and Selene argue in reply that they were required to proceed with their MPOs after Plaintiffs did not agree to quash and/or limit the topics as requested.  (*See* Dkt. No. 57 at 15; Dkt. No. 58 at 13.)

Plaintiffs also allege that U.S. Bank and Selene made "multiple misrepresentations" pertaining to agreements allegedly reached during the parties' meet-and-confer discussions (*see* Dkt. No. 56 at ¶ 21; Dkt. No. 55 at ¶¶ 24, 44), which U.S. Bank and Selene deny (*see* Dkt. No. 56 at 13 n.2; Dkt. No. 58 at 11 n.3).  Plaintiffs' allegations aside, the Court finds that, in light of the January 30, 2025 discovery deadline, expedited briefing on the MPOs is warranted.  (*See* Dkt. No. 43.)  Furthermore, Plaintiffs' position that U.S. Bank's deposition should have been

---

[4] Without an expedited ruling on the motions, Plaintiffs' responses would not be due until February 5, 2025 (21 days after filing), and additional time would then be required (up to 14 days) for U.S. Bank and Selene to file their replies (*see* N.D. Tex. Loc. R. 7.1(e)), and for this Court to consider the briefing and issue a ruling.

continued "rather than involv[ing] the Court" (*see* Dkt. No. 56 at ¶ 54), would have required further continuance of case deadlines—a request by Plaintiffs that the Court has already denied (*see* Dkt. No. 52).

The record reflects that on November 27, 2024, Plaintiffs served Selene with a notice of subpoena for deposition duces tecum, to occur on December 17, 2024. (*See* Dkt. Nos. 38, 40.) Following a "substantive meet and confer" on December 5, 2024, Plaintiffs issued an amended notice to Selene on December 18, 2024 (Selene App. 1-16), which increased the deposition topics from 11 to 33. (*Compare* Dkt. No. 38 *with* Selene App. 1-16.) On January 7, 2025, Selene re-urged its objections as discussed in the parties' December 5, 2024 meeting, asserted objections for the new topics, and requested Plaintiffs to quash and/or limit certain topics. (Selene App. 17-19.) After Plaintiffs did not respond, Selene filed the instant motion for protective order ("Selene MPO") requesting protection from the following objected-to topics.

> No. 5: The person with the most knowledge about Your organizational chart.
>
> No. 6: The person with the most knowledge about Selene Finance's engagement as servicer of the HELOC[5] and/or the FRLO.[6]
>
> No. 10: The person with the most knowledge about Your compensation for acting under the POA.[7]

---

[5] HELOC" means the Home Equity Line of Credit at issue in this lawsuit. (*See* Selene App. 8.)

[6] "FRLO" means the Fixed Rate Loan Option at issue in this lawsuit. (*See id*.)

[7] "POA" means the Limited Power of Attorney between Selene and U.S. Bank. (*See id*.)

No. 11: The person with the most knowledge about Your compensation for acting as the servicer of the HELOC and/or the FRLO.

No. 12: The person with the most knowledge about all written agreements between Selene Finance and the Trustee and which involve, control, or contain information about the HELOC and/or the FRLO.

No. 20: The person with the most knowledge about the agreement between the Trustee and its counsel of record for the Lawsuit and the Foreclosure, as well as the total sum in attorneys' fees which the Trustee or You on behalf of the Trustee is claiming through the date of this deposition, along with what sum in attorneys' fees has been actually paid to counsel for the Foreclosure and/or the Lawsuit, what sum in attorneys' fees remains due and outstanding for the Lawsuit and/or Foreclosure, all invoices and bills for attorneys' fees incurred for the Foreclosure and/or Lawsuit and which You or the Trustee have received to date, and the rates charged by each of the attorneys who has billed You or the Trustee any time for representing You or the Trustee in the Foreclosure and/or Lawsuit.

No. 22: The person with the most knowledge about the Trustee's assignment of rights with respect to the HELOC and the FRLO, including consideration paid to BoA for said assignment.

No. 33: The person with the most knowledge about all representations and warranties BoA made to You with respect to the HELOC and/or the FRLO.

(Selene App. 1-16.)

On December 5, 2024, Plaintiffs served U.S. Bank with a deposition notice, to occur on December 20, 2024. (U.S. Bank App. 1-9.) That same day, Plaintiffs and U.S. Bank engaged in a "substantive meet and confer" wherein U.S. Bank both lodged its objections to the deposition topics and sought to avoid a forthcoming deposition notice to U.S. Bank, in its individual capacity by providing Plaintiffs with an affidavit declaring that U.S. Bank had no individual interest in the subject loan and security instrument. (*See* Dkt. No. 49-1 at 5.) Thereafter, on January 3, 2025,

Plaintiffs moved to dismiss U.S. Bank, in its individual capacity, without prejudice. (*See* Dkt. No. 44-46.)

Then, on December 18, 2024, Plaintiffs issued the present amended notice (U.S. Bank App. 10-18), which is mostly unchanged from the original notice and lists 40 topics upon which U.S. Bank is required to designate an individual to provide testimony. (*See id*.) By letter dated January 7, 2025, U.S. Bank re-urged its objections as discussed in the parties' December 5, 2024 meeting and requested Plaintiffs to quash and/or limit certain testimony. (U.S. Bank App. 19-23.) After Plaintiffs did not respond, U.S. Bank filed the instant motion for protective order ("U.S. Bank MPO") requesting protection from the following objected-to topics.

No. 5: The person with the most knowledge about Your organizational chart.

No. 6: The person with the most knowledge about Selene Finance's engagement as servicer of the HELOC2 and/or the FRLO.

No. 10: The person with the most knowledge about Selene Finance's compensation for acting under the POA.

No. 11: The person with the most knowledge about Selene Finance's compensation for acting as the servicer of the HELOC and/or the FRLO.

No. 12: The person with the most knowledge about the assets of the Trust, and how they were acquired.

No. 13: The person with the most knowledge about all written agreements between U.S. Bank and the Trustee and which involve, control, or contain information about the HELOC and/or the FRLO.

No. 14: The person with the most knowledge about all written agreements between Selene Finance and the Trustee and which involve, control, or contain information about the HELOC, the FRLO, or Selene Finance's role in the Foreclosure or the captioned lawsuit.

No. 16: The person with the most knowledge about the organizational chart and leadership for the Trust and/or the Trustee, including where it is organized, where its offices and personnel are, and where its decisionmakers are located.

No. 23: The person with the most knowledge about Your agreement with Your counsel of record for the Lawsuit and the Foreclosure, as well as the total sum in attorneys' fees which You are claiming through the date of this deposition, along with what sum in attorneys' fees has been actually paid to Your counsel for the Foreclosure and/or the Lawsuit, what sum in attorneys' fees remains due and outstanding for the Lawsuit and/or Foreclosure, all invoices and bills for attorneys' fees incurred by You for the Foreclosure and/or Lawsuit and which You have received to date, and the rates charged by each of the attorneys who has billed You any time for representing You in the Foreclosure and/or Lawsuit.

No. 25: The person with the most knowledge about Your assignment of rights with respect to the HELOC and the FRLO, including consideration paid to BoA for said assignment.

No. 36: The person with the most knowledge about all representations and warranties BoA made to You and/or U.S. Bank with respect to the HELOC and/or the FRLO.

No. 37: The person with the most knowledge about the trustees of the Trust.

No. 38: The person with the most knowledge about the beneficiaries of the Trust.

No. 39: The person with the most knowledge about the settlors of the Trust.

No. 40: The person with the most knowledge about any agreements which control operation of the Trust, powers of the Trustee(s), rights of the beneficiary/beneficiaries, and all other management, control, or leadership of the Trust.

(U.S. Bank App. 10-18.)

## II. LEGAL STANDARDS

### A. Discovery Scope and Limits.

Rule 26(b) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information must therefore be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chun*g, 321 F.R.D. 250, 279 (N.D. Tex. 2017) (citing *Rocha v. S.P. Richards Co.*, No. 5:16-CV-411-XR, 2016 WL 6876576, at *1 (W.D. Tex. Nov. 17, 2016)) ("Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements."). Relevant information includes "any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)). Consequently, "[u]nless it is clear that the information sought can have no possible

bearing on the claim or defense of a party, the request for discovery should be allowed." *Brady*, 238 F.R.D. at 437.

**B.    Protective Orders.**

Conversely, Rule 26(c)(1) authorizes the Court to issue a protective order, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Under Rule 26(c), a court may impose a protective order that forbids "the disclosure or discovery" or prohibits "inquiry into certain matters, or limit[s] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). "The burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Meisenheimer v. DAC Vision Inc.*, No. 3:19-CV-1422-M, 2019 WL 6619198, at *2 (N.D. Tex. Dec. 4, 2019) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (brackets omitted)). Courts have generally concluded that to obtain a protective order, the moving party must show both "good cause and a specific need for protection." *Id.* (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

The Fifth Circuit has noted the following with respect to Rule 26(c)'s good cause requirement:

> [T]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the

information to the other party.  Courts also weigh relevant public interests in this analysis.

*Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (internal quotations and citations omitted).  To successfully oppose a motion for protective order, however, the party seeking discovery may "need to make its own showing of . . . the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues[.]"  *Dennis v. United States*, No. 3:16-CV-3148-G-BN, 2017 WL 4778708, at *4 (N.D. Tex. Oct. 23, 2017).  The court has broad discretion in determining whether to impose a protective order.  *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

The scope of what is discoverable is not limited simply to facts, but also may properly include other "matter[s]" that are relevant to a party's claims or defenses, "even if not strictly fact-based."  *Samsung v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).   For example, the information sought need not, standing alone, prove or disprove a claim or defense, or even have strong probative force.  *Id*.  The role of discovery in this respect is merely to find support for properly pleaded claims, rather than to find the claims themselves.  *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009).

C.    **Depositions Directed to Organizations.**

Rule 30(b)(6) permits a party to name a corporate entity as a deponent and requires the notice or subpoena to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Fulbright v. Union P. R.R. Co.*, No. 3:20-CV-2392-BK, 2021 WL 3809103, at *1-2 (N.D. Tex. June 29, 2021) (quoting *Dennis v. United States*, No. 3:16-CV-3148-G-BN, 2017 WL 4778708, at *8 (N.D. Tex. Oct. 23, 2017)). "Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Dennis*, 2017 WL 4778708, at *8 (citation omitted). And while a party who receives a deposition notice may move for a protective order pursuant to Fed. R. Civ. P. 26(c)(1) to limit the scope of the topics for examination, a corporation nevertheless has a duty to present and prepare a Rule 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources*." Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

## III.  ANALYSIS

In opposing the MPOs, Plaintiffs argue that the requested discovery is necessary to determine whether diversity jurisdiction exists, because they believe they

can defeat diversity jurisdiction if, through deposition testimony, they determine that (1) Selene is a necessary party and (2) the citizenship of the Trust (rather than the citizenship of U.S. Bank), controls for diversity purposes.

On January 16, 2025, the Court entered a Memorandum Opinion and Order denying Plaintiffs' motion for a continuance. (*See* Dkt. No. 52.) In that motion, Plaintiffs sought to continue all deadlines (Dkt. No. 34), including the September 19, 2024 deadline for amended pleading and joinder of parties. Among other things, Plaintiffs sought to amend their complaint to bring claims against Miguel Hernandez, the party from whom they purchased the Property. (*See* Dkt. No. 34 at ¶ 24.) But, as the Court explained, Plaintiffs were aware, or should have been aware, of their potential claims against Hernandez at the inception of their lawsuit. (*See* Dkt. No. 52 (citing Dkt. No. 1-2 ("Compl") at ¶ 12).) Plaintiffs' only explanation for failing to timely file a motion to amend their complaint and continue deadlines was that they hoped the case would settle early. (*See* Dkt. No. 34 at ¶¶ 21-27.)

Plaintiffs also claim they delayed certain discovery activities while waiting for the case to settle because they wanted to keep litigation costs down. (*See id*. at ¶¶ 14, 21.) As the Court noted, "[t]he Fifth Circuit has admonished litigants against taking this kind of 'wait and see' approach to requesting leave to amend." (*See* Dkt. No. 52 at 10-11 (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 n.6 (5th Cir. 2003) (citation omitted).)

Plaintiffs' "wait-and-see" approach having proven unsuccessful, Plaintiffs now seek to launch a jurisdictional challenge. Plaintiffs contend that U.S. Bank's

organizational structure regarding who is carrying out its duties and control over the assets of the Trust is relevant to the Court's diversity jurisdiction. (*See generally* Dkt. No. 56.) Plaintiffs also contend that testimony is necessary (from both U.S. Bank and Selene) to determine whether Selene has any interest in the subject loan, making it a necessary party and, therefore, defeating diversity jurisdiction. (*See id.*)

Specifically, Plaintiffs seek testimony from U.S. Bank regarding: (1) U.S. Bank's organizational chart and structure (topics 5 and 15); (2) U.S. Bank's compensation for acting under the POA between Selene and U.S. Bank and Selene's compensation for acting as servicer of the FRLO and/or the HELOC (topics 10 and 11); (3) U.S. Bank's servicing agreement with Selene (topic 14); (4) the consideration U.S. Bank paid to Bank of America for the assignment of the security instrument (topic 25); and (5) the assets, trustees, beneficiaries, and settlors of the trust and the applicable trust agreements (topics 12, 37, 38, 39, and 40). (*See generally* Dkt. No. 56.)

Plaintiffs similarly seek testimony from Selene regarding: (1) Selene's organizational chart (topic 5); (2) Selene's compensation for acting under the POA and as servicer of the FRLO and/or the HELOC (topics 10 and 11); (3) Selene's servicing agreement with U.S. Bank (topic 12); and (4) the consideration U.S. Bank paid to Bank of America for the assignment of the security instrument (topic 22) are necessary to determine whether Selene has any interest in the subject loan, making Selene a necessary party and, therefore, defeating diversity jurisdiction. (*See generally* Dkt. No. 55.)

U.S. Bank and Selene both respond that Plaintiffs' jurisdictional arguments lack merit. (*See* Dkt. No. 57 at 6-10; Dkt. No. 58 at 6-9.) U.S. Bank argues that its organizational chart and structure, the compensation paid to Selene for acting under the POA as servicer of the FRLO or the HELOC, U.S. Bank's servicing agreement, consideration U.S. Bank paid to Bank of America for the assignment of the security instrument, and the assets, trustees, beneficiaries, and settlors of the trust and the applicable trust agreements have no bearing on U.S. Bank's citizenship for diversity purposes. (*See* Dkt. No. 57 at 7.)

U.S. Bank argues that because it holds legal title to, and broad authority over, the trust assets on behalf of the trust, U.S. Bank's citizenship controls, and U.S. Bank is a Minnesota citizen. (*See id*. (citing Dkt. No. 1).) U.S. Bank further argues that even if the Trust's Delaware citizenship should control, as Plaintiffs argue (*see* Dkt. 56 at ¶¶ 49-52), complete diversity still exists. (*See* Dkt. No. 57 at 8.)

With respect to Selene, U.S. Bank and Selene both respond that Plaintiffs could have sued Selene when they initiated this lawsuit, but did not do so, and now they attempt to blame U.S. Bank for their decision not to timely seek leave to add Selene as a party to this lawsuit. (*See generally* Dkt. Nos. 58, 58.) And despite Plaintiffs' claims that U.S. Bank attempted to conceal Selene's role as mortgage servicer, U.S. Bank avers that U.S. Bank's application for an expedited foreclosure order in the underlying rule 736 action (filed on June 1, 2023)—to which Plaintiffs were served with and appeared—included a Selene affidavit stating that Selene services the subject loan, and U.S. Bank identified Selene in its initial disclosures

14

served on Plaintiffs on July 8, 2024.  (*See* Dkt. No. 57 at 5, 9 ((citing Dkt. 48-2, Appendix ("App.") 079).)  U.S. Bank and Selene further argue that, Selene, as a mortgage servicer, is only a nominal party, and not a necessary party whose absence would prevent adjudication of Plaintiffs' claims.  (*See* Dkt. No. 57 at 8; Dkt. No. 58 at 7.)

The objections in the MPOs primarily go to relevance.  The bar for relevancy is low and includes any matter "that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  Discovery is not limited to issues raised by the pleadings or to the merits of a case, for discovery itself is designed to help define and clarify the issues.  *Id*.  For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.  *Oppenheimer Fund*, 437 U.S. at 351 n.34 (citing 4 J. Moore, Federal Practice ¶ 26.56 [6], p. 26–131 (2d ed. 1976)).

Under Rule 26(b)(1) and Fifth Circuit case law, discovery requests must seek information that is relevant to the parties' claims or defenses as pleaded and may not be used only to find new claims or defenses.  And as explained above, to successfully oppose a motion for protective order, a party may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in

resolving the issues, in opposition to the resisting party's showing. *Dennis*, 2017 WL 4778708, at *4. Plaintiffs here have failed to make such a showing.

Every argument that Plaintiffs make regarding relevance comes down to the same contention: They seek information to defeat diversity jurisdiction, based on either (1) their contention that Selene, a citizen of Texas, is a necessary party, or (2) their contention that the citizenship of the Trust, not the citizenship of U.S. Bank, is controlling. Neither of these arguments establish that the requested discovery is relevant to the claims or defenses pleaded.

## A.    Plaintiffs' jurisdictional arguments fail.

When a trustee is sued in its capacity as trustee of a trust, the trustee's citizenship controls so long as it is an active trustee whose control over the assets held in its name is real and substantial. *Bynane v. Bank of New York Mellon*, 866 F.3d 351, 357 (5th Cir. 2017) (citing *Navarro v. Sav. Ass'n v. Lee*, 446 U.S. 458, 464–65 (1980) (holding that when the trustees are named as parties in the lawsuit, "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others")); *compare Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378 (2016) (explaining that, because corporations and unincorporated entities, such as the Maryland "real estate investment trust" at issue, are treated differently for jurisdictional purposes, the Supreme Court "adhere[s] to [the] oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all [its] members'"). As the Fifth Circuit explained in *Bynane*, the rules expressed in

16

*Navarro* and *Americold* "coexist," and "the *Navarro* rule still controls when the trustee sues or is sued in its own name." *Bynane*, 866 F.3d at 357.

Applying the appropriate analytical framework to this case, U.S. Bank's citizenship determines diversity jurisdiction. Plaintiffs sued "Defendants U.S. Bank Trust National Association"[8] and "U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For RCF 2 Acquisition Trust." (*See* Compl.) Because U.S. Bank, the trustee, was named as the defendant in this lawsuit, U.S. Bank is the real party to the controversy (and therefore its citizenship is what matters in determining diversity jurisdiction) because its control over the Trust's assets is real and substantial. *See Navarro*, 446 U.S at 464–65; *Bynane*, 866 F.3d at 357. U.S. Bank alleged in its removal notice that it is a Minnesota citizen. (*See* Dkt. No. 1 at ¶¶ 4-5.) Plaintiffs do not challenge this statement, nor do they dispute they are Texas citizens. (*See* Dkt. No. 56 at ¶¶ 49-52.) Accordingly, there is complete diversity of citizenship, and Plaintiffs have failed to show how information regarding the Trust is relevant to their claims. *See Dennis*, 2017 WL 4778708, at *4; *Brady*, 238 F.R.D. at 437.

Plaintiffs' argument that they need discovery into the Trust's assets, including the trustee, settlors, and beneficiaries of the Trust, and the trust agreements, to determine whether the Trust's Delaware citizenship should control fails for an

---

[8] As noted above, Plaintiffs have since moved to dismiss U.S. Bank, in its individual capacity, without prejudice. (*See* Dkt. No. 44-46.)

additional reason.  (*See* Dkt. No. 56 at ¶¶ 49-52.)   Even if the Trust's Delaware citizenship controlled—which the Court does not find to be the case—complete diversity still exists.

Additionally, to the extent Plaintiffs contend that these topics are relevant to explore whether Selene is a necessary party, these arguments likewise fail.  "[C]ourts that have addressed the issue of whether the mortgage servicer was a necessary party have determined that the mortgage servicer was only a nominal party whose presence was not necessary and whose absence would not prevent the courts from entering a final judgment."  *U.S. Bank Nat'l Ass'n v. Richardson*, No. 3:17-CV-2271-L, 2019 WL 1115059, at *4 (N.D. Tex. Mar. 11, 2019) (citing *Powell v. Nationstar Mortg. LLC*, No. 4:16-CV-251, 2017 WL 191261, at *2 (E.D. Tex., Jan. 18, 2017)), and *Schmelzer v. Nationstar Mortg., LLC*, No. 4:16-CV-389, 2016 WL 4368735, *1 (E.D. Tex. Aug. 16, 2016)).  Therefore, "[Selene's] participation in this lawsuit is not required for foreclosure by U.S. Bank to be proper."  *Id*.; *see also Schmelzer*, 2016 WL 4368735, *1 (a mortgage servicer was not a necessary party to a request for declaratory relief seeking to invalidate a lien).

Furthermore, "[w]hen removal is based on diversity of citizenship, diversity must exist at the time of removal."  *Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000); *see also Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (jurisdiction is fixed at the time of removal).  "Accordingly, when determining whether jurisdiction is present and removal is proper, the Court is to consider the claims as alleged in the state court petition as they existed at the time of removal."

*Quibodeaux v. Nautilus Ins. Co.*, No. 1:10-CV-739, 2012 WL 12919188, at *3 (E.D. Tex. July 30, 2012) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)), *adopted*, 2012 WL 12919189 (E.D. Tex. Aug. 21, 2012).  Plaintiffs here have not disputed that diversity jurisdiction existed at the time of removal.

Moreover, Selene is not a party to this case.  Although Plaintiffs could have sued Selene when they initiated this lawsuit, they did not do so.  Plaintiffs assert that U.S. Bank "concealed" Selene's role as mortgage servicer, appearing to suggest that this "concealment" prevented them from moving to remand, but the record does not support this assertion.  Contrary to Plaintiffs' assertion, U.S. Bank's application for expedited foreclosure order in the underlying rule 736 action (filed on June 1, 2023) included a Selene affidavit stating Selene services the subject loan (U.S. Bank App. 6-9), and U.S. Bank disclosed Selene in its initial disclosures served on Plaintiffs on July 8, 2024 (U.S. Bank App. 79).

Plaintiffs also acknowledged in the parties' June 21, 2024 Joint Status Report that Selene was the servicer of the loan, that Selene and U.S. Bank had the same address, and that Selene is a domestic Texas company.  (*See* Dkt. No. 13 at 5.) Although Plaintiffs stated in the Joint Status Report they intended to file a remand motion due to lack of jurisdiction (*see id.* at 6), they have not done so.  Thus, Plaintiffs cannot now attempt to cure their decision not to timely seek leave to add Selene as a party by disputing that diversity jurisdiction existed at the time of removal.  Even assuming that Plaintiffs could add Selene as a party at this juncture—which they cannot—Selene's presence would be nominal and would not destroy

19

diversity jurisdiction for the reasons outlined above.  *See Richardson*, 2019 WL 1115059, at *4; *Powell*, 2017 WL 191261, at *2; *Schmelzer*, 2016 WL 4368735, at *1.

Plaintiffs also claim that, because U.S. Bank has refused to produce documents regarding these topics (*see* Dkt. No. 56 at 12-13, 15-18, 20-23; Dkt. No. 55 at 12-19), Selene's testimony is their last resort to obtain this information, but Plaintiffs did not to move to compel U.S. Bank to produce additional documents; and the January 15, 2025 deadline to file motions to compel U.S. Bank to produce additional documents has passed.  (*See* Dkt. No. 43.)  Therefore, Plaintiffs waived any complaint regarding U.S. Bank's production.  *See Slack v. Outback Steakhouse of Fla., LLC*, No. 6:20-CV-00103, 2022 WL 1177892, at *1 (E.D. Tex. Apr. 20, 2022) ("Likewise here, Slack did not move to compel production or seek to have the court overrule Outback's objections to the document request. As such, Slack waived her complaint that Outback did not produce additional incident reports." (citing *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 389 (5th Cir. 1989))).

**B.    Any discovery regarding the servicing agreement is irrelevant.**

Plaintiffs also seek testimony regarding the December 10, 2020 servicing agreement between U.S. Bank and Selene, arguing that the servicing agreement is relevant because it predates the November 2, 2023 POA by three years, and therefore, Selene must have only been acting on U.S. Bank's behalf pursuant to the servicing agreement when loan servicing transferred to Selene effective May 2, 2022. (*See* Dkt. No. 56 at 13-15 (topic 6), 16-17 (topic 14).); Dkt. No. 55 at14-15 (topic 6), 16-17 (topic 12.)  U.S. Bank responds that Plaintiffs misunderstand mortgage

servicing, as "[i]t is common practice for mortgage servicers and mortgagees to execute new powers of attorney over time." (*See* Dkt. No. 57 at 10; U.S. Bank App. 82-95 (POAs dated January 20, 2022, August 17, 2022, and November 2, 2023).)

Plaintiffs do not dispute that Selene services the loan for U.S. Bank, and in fact, they state: "This lawsuit can be distilled down to competing claims for declaratory judgment as to whether a security interest in the Plaintiffs' home held by Defendant US Bank . . . is valid." (See Dkt. No. 56 at 5.) Furthermore, as previously explained, Selene is, at best, "only a nominal party whose presence is not necessary and whose absence would not prevent the courts from entering a final judgment." *Richardson*, 2019 WL 1115059, at *4 (citation omitted); *Schmelzer*, 2016 WL 4368735, *1 (a mortgage servicer was not a necessary party to a request for declaratory relief seeking to invalidate a lien). Thus, Plaintiffs have not shown that the rights and obligations of U.S. Bank and Selene under the servicing agreement and the parties' compliance with obligations under that agreement are any way relevant to the validity of the lien at issue in this litigation.

## C.    Until there is a determination of liability, attorneys' fees are irrelevant.

Plaintiffs also seek deposition testimony as to U.S. Bank and Selene's attorneys' fees because U.S. Bank "has pled a claim for its attorneys' fees as damages in both this lawsuit and the fees incurred in the 736 Action." (*See* Dkt. No. 56 at 19-20 (topic 23); *see also* Dkt. No. 55 at 17-18 (topic 20).) Plaintiffs contend "[i]t is unclear which entity Selene and Defendant will claim actually incurred the fees

Defendant is claiming herein[.]" (*See* Dkt. No. 56 at 20.) Selene, however, is not a party to this lawsuit and therefore has not asserted a claim for attorneys' fees.

More importantly, "Texas courts 'have long distinguished attorney's fees from damages.'" *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1038 (5th Cir. 2014) (quoting *In re Nalle Plasics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)). "To differentiate the two, Texas courts draw a distinction between compensation owed for an underlying harm and fees that may be awarded for counsel's services." *Id.* Thus, attorneys' fees are not damages in these circumstances. They are, therefore, only relevant after a determination of liability. *See Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 633 (S.D. Tex. 2007) ("attorneys' fee claims are . . . resolved at the close of the case, after both liability and damages have been determined."). If a judgment is entered in U.S. Bank's favor, Plaintiffs will have the opportunity to challenge the reasonableness of any motion for attorneys' fees at that time. Therefore, Plaintiffs have not shown the relevance of this testimony at this stage of the lawsuit.

D.    **Neither the consideration U.S. Bank paid Bank of America for the assignment of the security instrument, nor Bank of America's representations and warranties pertaining to the loan are relevant.**

Plaintiffs claim that testimony regarding the amount of consideration U.S. Bank paid Bank of America is relevant to their equitable estoppel defense "to help determine if [Bank of America] knowingly sold [U.S. Bank] a loan which it knew was required to be released and the security instrument for the same was invalid, if BOA mistakenly included the Loan in a broader group of loans that it sold to [U.S.

Bank], knowing it had been paid off, or if [U.S. Bank] paid nothing for the assignment because [U.S. Bank] knew the Loan had been repaid and the Security was invalid, but which [U.S. Bank] is wrongfully pursing nevertheless." (Dkt. No. 56 at ¶ 48.)

Plaintiffs do not dispute that Bank of America assigned the loan to U.S. Bank. The face of the assignment from Bank of America to U.S. Bank provides it was made with "good and valuable consideration, the sufficiency of which is hereby acknowledged." (Dkt. No. 17-3.) This recitation of consideration on the assignment's face is sufficient to validate it. *See Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-CV-298-RWS-KNM, 2016 WL 7634050, at *6 (E.D. Tex. Dec. 2, 2016) (citing *Dale v. Alethes, LLC*, 2013 WL 12114867, at *3 (W.D. Tex. July 1, 2013) (collecting cases)), *adopted*, 2017 WL 26083 (E.D. Tex. Jan. 3, 2017). Therefore, the amount paid for the assignment of the security instrument has no bearing on the validity of the lien, and further discovery into the consideration paid has no bearing on the parties' claims or defenses.

Regarding Plaintiffs' contention that testimony pertaining to Bank of America's representations and warranties is relevant to their equitable estoppel defense, Plaintiffs' argument hinges on an alleged representation by Bank of America to Community National Title, LLC ("CNAT") (*see* Dkt. No. 56 at ¶ 46) during a previous transfer of title to the Property, not any representation or warranty from Bank of America to U.S. Bank. Furthermore, Plaintiffs fail to explain how Bank of America's alleged representations to CNAT establish a representation to "all

23

subsequent purchasers of the Property–including Plaintiffs." (*Id.*)  Because the validity of the lien at issue in this litigation will not be established or disproved by any representation or warranty that Bank of America made to U.S. Bank, any testimony in this regard is irrelevant.

Considering the above factors and all the circumstances of this case, the Court finds that Plaintiffs have not shown "any possibility that the information sought may be relevant to the claim or defense of any party." *Brady*, 238 F.R.D. at 437; *see Merrill*, 227 F.R.D. at 470.  Consequently, the deposition topics at issue should not be allowed.

## IV.  CONCLUSION

For all the foregoing reasons, Defendant's Expedited Motion for Protective Order from Certain Rule 30(b)(6) Deposition Topics (Dkt. No. 49) is **GRANTED**, and Selene's Expedited Motion for Protective Order from Certain Deposition Topics (Dkt. No. 48) is likewise **GRANTED**.

**SO ORDERED** on January 28, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

24